# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM E. BUSH,** | : | **CIVIL ACTION NO. 1:08-CV-1990** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **LEWISBURG U.S.P. FEDERAL** | : | |
| **PRISON**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff William E. Bush ("Bush"), a federal inmate formerly incarcerated at

the United States Penitentiary at Lewisburg ("USP-Lewisburg"), initially filed this

Bivens[1] action on November 3, 2008. (Doc. 1.) The matter is presently proceeding

*via* a second amended complaint in which the following individuals are named as

defendants: Troy Williamson ("Williamson"), Warden; G. Edinger ("G. Edinger"),

Correctional Officer; John Adami ("Adami"), Unit Manager, J. Dunkleburger

("Dunkleburger"), Case Manager Coordinator; J. Cavanaugh ("Cavanaugh",

Correctional Counselor; C. Shultz ("Schultz"), Correctional Officer; J.

Candelora ("Candelora"), Correctional Officer; T. Hooper ("Hooper"), Lieutenant;

F. Strada ("Strada"), Correctional Services Administrator, Central Office (formerly

an Associate Warden, USP-Lewisburg); E. Bradley ("Bradley"), Complex Captain,

FCC Allenwood, (formerly Captain, USP-Lewisburg); R. Hoekman ("Hoekman");

---

[1]Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) allows a citizen suffering a compensable constitutional injury to invoke general federal question jurisdiction to obtain an award of monetary damages.

Susan Heath ("Heath"), Mark Edinger ("M. Edinger"); and Bunch.[2]  (Doc. 33.)

Pending before the court is a motion to dismiss and for summary judgment filed on

behalf of defendants.  (Doc. 50.)  For the reasons set forth below the motion to

dismiss will be denied and the motion for summary judgment will be granted.

## I.  Motion to Dismiss

### A.  Allegations of the Complaint

On or about June 2006, Bush informed the lieutenant on duty that he needed

to be placed in protective custody because he was being threatened with physical

harm and pressured by inmates from the District of Columbia based on his

cooperation with an "S.I.S." investigation.  (Doc. 33, at 8, ¶¶ 1, 2.)  He was

immediately placed in protective custody.

In August 2006, he was approached by "two unknown S.I.S. officers" who

informed him that they spoke with "shot callers" from the D.C. inmates contingent

and the New York inmates group and that they arranged to pay the shot callers to

be sure Bush was safe upon release to general population.  (Id. at 9, ¶ 3.)  He was

told to "go out to the compound and do what S.I.S. Susan Heath and Mark Edinger

been paying [him] for or rot back here in the hole and do the rest of [your] time

back here cause [he] wasn't getting transferred [he] would die befor [sic] that."  (Id.)

_____

[2]Bush originally named USP-Lewisburg as the sole defendant.  (Doc. 1.)  On
April 28, 2009, the complaint was dismissed for lack of subject matter jurisdiction,
but he was afforded the opportunity to amend.  (Doc. 21.)  Bush filed an amended
complaint in June, 2009.  (Doc. 27.)  Bush subsequently filed a second amended
complaint, which is the governing pleading.  (Doc. 33.)

He refused to return to general population unless all the D.C. inmates were taken off the yard. (Id. at ¶ 4.) G. Edinger asked him why he was afraid to go back out to the compound and "whispered thew [sic] the door you don't want to make my brother [M. Edinger] angry Mr. Bush." (Id.) G. Edinger threatened to put a D.C. inmate in the cell with him. (Doc. 33, at 10, ¶ 5.) When Bush informed defendant Hooper of the threat by G. Edinger, he was told to "lay down and go to sleep." (Id. at 11, ¶ 8.) He states that he reported the threat and the poor treatment he was receiving from the special housing unit staff to defendant Strada and he was told to file a BP-8. (Id. at ¶ 12.) Bush also alleges that he filed a BP-8 and spoke to defendant Williamson concerning the threat and the poor manner in which he was being treated and he was told that he would get a response following an investigation. (Id. at ¶ 9.)

In September 2006, Williamson allegedly verbally informed Bush that his grievance was denied and he would be returned to general population. (Id. at ¶ 10.) He states that he handed his BP-9 to defendant Adami and that in October 2006, Adami told him that the Philadelphia Regional Office called USP-Lewisburg and "told [L]ewisburg to handle it." (Id. at ¶ 11.) Defendant Bradley allegedly told him that after the disposition of his BP-8 and BP-9, his only option was to return to general population. (Id. at 12, ¶ 13.)

In December, 2006, he was assaulted. (Id. at ¶ 14.) He states that he gave his BP-9, BP-10, and BP-11 complaining of the assault to defendant Cavanaugh. In February 2007, he alleges that defendant Cavanaugh informed him that all his

requests for administrative relief were received by the appropriate offices and they were conducting an investigation. In March 2007, he asked defendant Dunkelberger why he was not being transferred. (Id. at 13, ¶ 15.) He informed Bush that the investigation was still pending which Bush alleges "was a lie they never received my administrative remedy requests I learned later in time." (Id.)

## B.     Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The

plaintiff must present facts that, if true, demonstrate a plausible right to relief. See

FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain

statement of the claim showing that the pleader is entitled to relief"); Ashcroft v.

Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that Rule 8

requires more than "an unadorned, the-defendant unlawfully-harmed-me

accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient

to "raise a right to relief above the speculative level"). Thus, courts should not

dismiss a complaint for failure to state a claim if it contains "enough factual matter

(taken as true) to suggest the required element. This does not impose a probability

requirement at the pleading stage, but instead simply calls for enough facts to raise

a reasonable expectation that discovery will reveal evidence of the necessary

element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Under this

liberal pleading standard, courts should generally grant plaintiffs leave to amend

their claims before dismissing a complaint that is merely deficient. See Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d

113, 116-17 (3d Cir. 2000).

**C.    Discussion**

Defendants argue that any claim arising out of an August 2006 incident

report and the subsequent hearing before the disciplinary hearing officer is barred

by the statute of limitations. (Doc. 52, at 10.) Although there is apparently an

August 15, 2006, incident report, see Doc. 53-2, Cunningham Decl., at 5, ¶4, nowhere

in the second amended complaint does Bush reference this report or the

subsequent disciplinary hearing. (Doc. 33.) Consequently, such a claim is not

before the court and defendants' motion to dismiss will be denied.[3]

II.     **Motion for Summary Judgment**

    A.     **Statement of Facts**

Defendants' statement of material facts primarily sets forth facts surrounding

Bush's failure to exhaust the Federal Bureau of Prisons' ("BOP") administrative

---

[3]If such a claim were before the court it would be barred by the statute of limitations. In Bivens actions, the district court utilizes the appropriate state statute of limitations which governs personal injury actions. See Wallace v. Kato, 549 U.S. 384, 387-88 (2007); Wilson v. Garcia, 471 U.S. 261, 276 (1985); Urrutia v. Harrisburg Cnty. Police Dept., 91 F.3d 451, 457 n. 9 (3d Cir.1996). Pennsylvania's applicable personal injury statute of limitations is two years. See 42 PA. CONS. STAT. § 5524(7); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993). A cause of action accrues when a plaintiff knew or should have known he was harmed. See Sameric Corp. of Delaware, Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).

    Clearly Bush knew, or should have known of any injury stemming from the incident report and disciplinary hearing immediately. The two-year statute of limitations would have accrued in August 2006, and would have expired in August 2008. Bush did not file this action until November 3, 2008. (Doc. 1). Accordingly, any claim arising out of an August 2006 incident report and/or disciplinary hearing would be barred by the statute of limitations.

review procedure.[4]

A search of the BOP's SENTRY system records revealed that Bush filed five requests for administrative relief. (Doc. 53-2, Declaration of L Cunningham, Supervisory Attorney at USP Lewisburg ("Cunningham Decl."), at 5, ¶ 3.) Four of the five requests involved challenges to an August 15, 2006, incident report. (Id. at ¶ 4.) He exhausted available administrative avenues with regard to this incident report and the disciplinary hearing. (Id. at ¶¶ 4, 8-9.) On November 21, 2006, Bush filed a fifth request entitled "Questions his safety, Req. Safety status." (Id. at ¶¶ 5., 10.) The request was rejected on the same date because he failed to submit a copy of his BP-8, and he was instructed to resubmit the request. (Id. at ¶ 5.) Specifically, he was informed that "You state you enclosed your BP-8 with this BP-9. It was not

---

[4]In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, who is the nonmoving party. See infra Part IIB. Local Rule 56.1 requires the nonmoving party's statement of facts to respond to the numbered paragraphs set forth in the moving party's statement, and to "include references to the parts of the record that support the statements." L.R. 56.1. Bush has failed to file a statement disputing the facts concerning exhaustion. Therefore, with the exception of those facts clearly disputed by Bush *and* supported by adequate record references, the court will adopt defendants' statement of fact. See L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); see also Harrison v. Ammons, Civ. A. No. 1:05-CV-2323, at *1, n.1 (M.D. Pa. Aug. 19, 2009) (Conner, J.) (adopting moving party's statement of facts when non-movant failed to comply with Local Rule 56.1); Novinger Group, Inc. v. Hartford Life & Annuity Ins. Co., Civ. A. No. 1:06-CV-0188, 2008 WL 5378288, at *1 n.2 (M.D. Pa. Dec. 23, 2008) (Conner, J.) (same); United States ex rel. Paranich v. Sorgnard, 286 F. Supp. 2d 445, 447 n.3 (M.D. Pa. 2003) (Conner, J.) (same), aff'd, 396 F.3d 326, 330 & n.5 (3d Cir. 2005). The court has scoured the Rule 56.1 statements and the record in order to ensure a fair and impartial recitation.

included. Please submit the BP-8 and this BP-9 will be processed." (Doc. 53-2, at 10.) He failed to do so. (Id.)

There is no record of a request for administrative relief concerning the December 2006 assault. (Doc. 53-2, at 7-10.)

**B.     Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

**C.     Discussion**

The Prison Litigation Reform Act (PLRA) requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court. The act specifically provides as follow:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).  Prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process.  See Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001).  "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71.  The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court.[5] Woodford v. Ngo, 548 U.S. 81, 93 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.  Such requirements "eliminate unwarranted federal-court interference with the administration of

---

[5]A prisoner does not have to allege in his complaint that he has exhausted administrative remedies.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  Failure to exhaust available administrative remedies is an affirmative defense that must be pleaded and proven by the defendants.  Id.; see also Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Nussle, 534 U.S. at 525)).

The Bureau of Prisons has a process through which an inmate may seek formal review of a complaint related to any aspect of his confinement. (Doc. 53-2, Cunningham Decl., at 4, ¶ 2.) If informal resolution (BP-8) proves unsuccessful, the inmate may raise the complaint with the warden of the institution (BP-9) where he or she is confined. (Doc. 53-2, at 4, ¶ 2.) If an inmate is dissatisfied with the warden's response, he or she may appeal the decision to the Regional Director and then to the General Counsel of the BOP (BP-10, BP-11). (Doc. 53-2, at 4, ¶ 2.) A BOP decision is not final—and thus not reviewable—until the General Counsel's Office has resolved the appeal. Id.

The Cunningham declaration and supporting documentation establish that Bush failed to utilize any facet of the administrative review process with respect to the December 2006 assault. Although he avers that he gave his BP-9, BP-10, and BP-11 complaining of the December 2006 assault and rape to defendant Cavanaugh and that in February 2007, defendant Cavanaugh informed him that his requests for administrative relief were received by the appropriate offices and an investigation was being conducted (Doc. 33, at 12, ¶14), he fails to support these statements by submitting affidavits, documentary or other evidence. He provides no copies of the documents he supposedly filed during the grievance procedure or of any administrative responses. Instead, he wholly relies on unsupported assertions,

conclusory allegations and mere suspicions, which are insufficient to overcome summary judgment. The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Bush has failed to meet his burden.[6] Defendants' motion for summary judgment will be granted.

## III.    Conclusion

Based on the foregoing, defendants' motion to dismiss and for summary judgment (Doc. 50) will be granted.


                                      S/ Christopher C. Conner
                                      CHRISTOPHER C. CONNER
                                      United States District Judge


Dated:        September 22, 2010

---

[6]Bush fares no better in relying on the filing of a BP-8 in November 2006, raising issues of his security. Although he represents that he filed such a BP-8 (Doc. 58, at 4), he fails to submit a copy of the form and it is undisputed that there is no copy in the files of the BOP because when Bush attempted to file a BP-9 on November 21, 2006, his request was rejected for failure to enclose a copy of his BP-8. He was directed to resubmit the request along with a copy of the BP-8, but he never did. Significantly, even if he had filed a BP-8 concerning this issue, it is undisputed that he failed to pursue the administrative review process to conclusion.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM E. BUSH,** | : | **CIVIL ACTION NO. 1:08-CV-1990** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **LEWISBURG U.S.P. FEDERAL PRISON**, *et al.*, | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 22nd day of September, 2010, upon consideration of defendants' motion to dismiss and for summary judgment (Doc. 50), and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. Defendants' motion to dismiss (Doc. 50) is DENIED.

2. Defendants' motion for summary judgment (Doc. 50) based on plaintiff's failure to exhaust his administrative remedies is GRANTED.

3. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

4. The Clerk of Court is further directed to CLOSE this case.

5. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge